**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt.loker@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

*Attorney for Plaintiff*,
Tamera Marie L. Szijarto

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMERA MARIE L. SZIJARTO,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC.<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. § 1693, ET SEQ. AND OTHER CAUSES OF ACTION**<br><br>**JURY TRIAL DEMANDED** |

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                                                                 *Szijarto v. Coinbase Global, Inc.*

**COMPLAINT**

## INTRODUCTION

1. The stated purpose of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objection…is the provision of individual consumer rights." *Id.* Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id.*, at 1693d-1.

2. Division 11 of the California Commercial Code allocates rights, duties, and liabilities amongst the parties engaging in the use of wire transfer systems. (*Zengen, Inc. v. Comerica Bank* (2007) 41 Cal.4th 239, 253 [59 Cal.Rptr.3d 240, 158 P.3d 800]). California Commercial Code 11101, et seq. ordinarily requires the bank which received the wire transfer instructions to bear the risk of unauthorized transfers, save for a few narrow circumstances.

3. TAMERA MARIE L. SZIJARTO ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of COINBASE GLOBAL, INC. ("Defendant"), with regard to unauthorized electronic funds transfers.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or her counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Except where otherwise stated, all the conduct engaged in by Defendant took place in California.

7. Defendant's violations were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid its violations.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                       **1 OF 14**                *Szijarto v. Coinbase Global, Inc.*

**COMPLAINT**

8.  Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## JURISDICTION AND VENUE

9.  Jurisdiction of this Court arises under 28 U.S.C. § 1331. More particularly, this action arises out of Defendant's violations of the Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"). This Court has supplemental jurisdiction of all other claims.

10. Because Defendant conducts business within the State of California, personal jurisdiction is established.

11. Further, this action arises out of Defendant's violations of the California Commercial Code § 11101, et seq.  Accordingly, the California Commercial Code §§ 11101, et seq. is substantive law at issue.

12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiff is a natural person who resides in the State of North Carolina, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j), and is a "customer" as defined by California Commercial Code § 11105(3).

14. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. 1693a(6).

15. Defendant routinely engages in the practice of electronic fund transfers as defined by 15 U.S.C 1693a(7)

16. Defendant is a "financial institution" as defined by 15 U.S.C. 1693a(9).

17. Defendant is a corporation doing business in this district, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                             **2 OF 14**                    *Szijarto v. Coinbase Global, Inc.*
                                      **COMPLAINT**

# FACTUAL ALLEGATIONS

18. At all times relevant, Plaintiff has been an individual residing within the State of North Carolina.

19. Plaintiff maintained an account with Defendant. This account consisted of crypto currency and was acquired on the Coinbase platform from around July 4, 2017 until March 11, 2024.

20. Sometime in 2024 until or around May 15, 2025, Defendant experienced a data breach in which Plaintiff's confidential information was stolen.

21. Plaintiff was not notified of this data breach or that her confidential information may have been stolen when the breach occurred.

22. On or around May 16, 2025. Plaintiff received a phone call with a California area code claiming to be a customer support representative of Defendant addressing Plaintiff by her full name.

23. The caller stated that Plaintiff's account was compromised and was calling to help her secure her account due to suspicious activity that Coinbase had blocked on her behalf.

24. The caller knew Plaintiff's name, phone number, email address associated with Plaintiff's Coinbase account, and Plaintiff's transaction and transfer history.

25. This knowledge led Plaintiff to reasonably believe the caller was in fact a representative of Defendant and trusted the caller was telling the truth.

26. During this phone call, the caller sent Plaintiff an e-mail from an account that appeared to be from Defendant.

27. This e-mail contained information and links so Plaintiff could secure her account.

28. The caller walked the Plaintiff through setting up a new Coinbase Wallet to transfer funds into as her current wallet was deemed no longer secure by the caller due to aforementioned suspicious activity.

CASE NO.:                           3 OF 14                    *Szijarto v. Coinbase Global, Inc.*
COMPLAINT

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

29. The caller walked the Plaintiff through how to disconnect her cold storage wallet from her compromised Coinbase account, which included providing Plaintiff's Seed Phrase which acts like a password. The caller also succeeded in having the Plaintiff transfer funds from Plaintiff's Robinhood account to the new Coinbase Wallet account.

30. Once the transfer from Robinhood was completed, the caller asked for Plaintiff's Seed Phrase to the newly created Coinbase Wallet account, which acts like a password.

31. This made the Plaintiff suspicious, and Plaintiff initiated to confirm the validity of the e-mails directly with a separate representative of the Defendant.

32. The caller discouraged this call, citing time was of the essence due to the nature of the threat, but Plaintiff called anyway.

33. Plaintiff proceeded to request a call from Defendant and connected with a representative of Defendant.

34. The representative asked the same verifying questions the initial caller had used.

35. While on the phone with the Plaintiff, the representative asked if plaintiff followed the steps the initial caller gave her.

36. At no point during this call did the representative inform Plaintiff of the data breach that had occurred.

37. It was during this call with the representative when Plaintiff came to the sudden realization that she was a victim of fraud.

38. When plaintiff checked her account, she discovered that 2.69496319 Bitcoin, at the time $278,840.53 worth of Bitcoin was stolen from her account.

39. On the same day, May 16, 2025, Plaintiff filed a police report outlining the events that led to the fraudulent withdrawal.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

40. On the same day, May 16, 2025, Plaintiff also filed a complaint with the FBI's Internet Crime Complaint Center ("IC3").

41. On May 18, 2025, Plaintiff had another call with a representative of Defendant. Plaintiff requested her funds to be returned. The representative still did not disclose information about the breach but did not deny it when confronted by Plaintiff.

42. During the call with Defendant's representative, the representative had requested the Plaintiff to send over all information Plaintiff had regarding her call with the fraudster including a scan of Plaintiff computer.

43. On May 22, the Plaintiff submitted the police report and IC3 via Defendant's SendSafely portal. She had multiple phone calls afterwards in which she provided an account of what happened and expressed her concerns that Defendant has not properly handled its internal security issues.

44. Plaintiff received no response or assurances to her concerns regarding security and submitted the requested information anyway to Defendant on June 12, 2025 via Defendant's SendSafely portal in addition to a phone call with Customer Support of Defendant. In her note to Defendant, Plaintiff sought that her information be handled by only assigned and verified Coinbase representative, confidentially, to reduce further risk of exposure of her data.

45. Plaintiff further emailed Coinbase Support requesting a return of her funds on June 20, and had another phone call on June 25.

46. On or around July 11, 2025, Plaintiff called Defendant to get a status update on her disputes.

47. While on this call, Plaintiff was informed that Defendant will not be refunding the stolen amount.

48. There was no reason provided, only "due to the details" was mentioned by the representative but did not specify which details.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

49. Plaintiff initiated another complaint through Defendant's website on August 28, 2025 to escalate the matter.

50. Defendant denied Plaintiff's request for funds to be returned via email from Defendant on October 9, 2025 and again on October 24, 2025.

51. This denial also overlooks the fact the fraudster was impersonating Defendant, knew confidential information related to Plaintiff's account that only Defendant could know, and the fraudster even mimicked Defendant's e-mail address to procure the account verification fraudulently.

52. Plaintiff provided all information Defendant requested to help recover the stolen funds.

53. Despite this evidence, Defendant still holds Plaintiff liable for fraudulent withdrawal and refuses to refund the stolen amount.

54. As a result of the fraudulent withdrawal and Defendant's inaction, Plaintiff has suffered extreme harm to her mental and physical health. To this day, Plaintiff's mental health has been severely damaged to the point her young daughter can notice how upset she is as a result of the fraud.

55. The weekend following the fraud, Plaintiff could not focus nor enjoy her daughter's first piano recital, an event she was looking forward to, and felt like a bad parent because she was worried about the fraud instead of enjoying a momentous occasion.

56. Plaintiff has lost work and sleep worrying about not only her future but the financial future of her daughter because of the fraud and lost savings.

57. Plaintiff has been in constant dispute with Defendant trying to get this situation remedied.

58. Plaintiff submitted her dispute to Defendant in less than 60 days from learning about the stolen funds.

59. Defendant's investigation was unreasonable.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                    6 OF 14                 *Szijarto v. Coinbase Global, Inc.*
**COMPLAINT**

60. More specifically, Defendant should have discovered from its own records, including Plaintiff's investigative materials, that the transactions at issue were unauthorized and fraudulent transactions.

61. Defendant did not have a reasonable basis for believing that Plaintiff's account was not in error.

62. Defendant knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

63. Throughout their investigation, Defendant did not provide any provisional credits to Plaintiff.

64. Through this conduct, Defendant violated 15 U.S.C. § 1693f.

65. Through this conduct, Defendant violated 15 U.S.C. § 1693g.

66. The above-mentioned transactions were unauthorized electronic fund transfers as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

67. Further, per California Commercial Code § 11202(f) the rights and remedies arising under § 11202 or § 11203 cannot be waived by agreement, except for in narrow circumstances described therein.

68. The request to have the unauthorized wire transfer initiated was a "payment order" under California Commercial Code § 11103.

69. Plaintiff and Defendant did not have an agreed upon "security procedure" as defined under California Commercial Code § 11201.

70. As explained above, Plaintiff did not approve of this transfer and the wire transfer was initiated without Plaintiff's consent. Thus, the transfer was not authorized transfers under California Commercial Code § 11202(a).

71. Plaintiff notified Defendant of the fact that the transfer was unauthorized within statutory period defined in Section 11204 of the Commercial Code.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

72. Defendant is obligated to refund said fraudulent wire transfer to Plaintiff under Section 11204 of the Commercial Code. Defendant failed to do so.

73. Plaintiff submitted their dispute to Defendant in less than 90 days from after receipt of notification from Defendant that the unauthorized order was accepted by it or that the Plaintiff's account was debited.

74. Through its actions, Defendant has acted negligently by processing the fraudulent wire transfer.

75. More specifically, Defendant should have discovered from its own records, including Plaintiff's testimony and investigative materials, that the transactions at issue were unauthorized and fraudulent transactions.

76. Defendant did not have a reasonable basis for believing that Plaintiff's account was not in error.

77. Defendant knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

78. Through the conduct described herein, Defendant violated California Commercial Code § 11204.

79. To date, Defendant continues to hold Plaintiff responsible for the fraudulent transaction.

80. Since Plaintiff's efforts to be absolved of the unauthorized fraudulent transactions were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's dispute.

///

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                    **8 OF 14**                *Szijarto v. Coinbase Global, Inc.*
                             **COMPLAINT**

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

### 15 U.S.C. § 1693 *ET SEQ.* (EFTA)

81. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

82. The foregoing acts and omissions constitute numerous and multiple violations of EFTA.

83. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

### COUNT II

### NEGLIGENCE

84. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85. At all times relevant, Defendant owed Plaintiff a duty to exercise reasonable care in safeguarding her Coinbase account, protecting her account from unauthorized access and transfer, and promptly and reasonably responding to reports of fraudulent activity.

86. This duty arose from, among other sources, the nature of the custodial relationship in which Defendant retained control of the private keys for Plaintiff's custodial wallet, industry standards for digital asset custodians, and Defendant's own representations in its User Agreement regarding asset security, remediation of unauthorized transactions, and management of security breaches.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                    **9 OF 14**             *Szijarto v. Coinbase Global, Inc.*
                          **COMPLAINT**

87. Defendant breached these duties by, among other things:

    a. Failing to maintain adequate safeguards to prevent the May 15, 2025 data breach;

    b. Failing to detect and block the unauthorized transfer of digital currency from Plaintiff's custodial wallet despite having control of the private keys;

    c. Failing to take reasonable steps to recover or restore the stolen assets after being promptly notified;

    d. Conducting an unreasonable investigation and wrongfully concluding that the transactions were authorized; and

    e. Refusing to credit or return Plaintiff's stolen digital currency despite clear evidence of fraud.

88. As a direct and proximate result of Defendant's negligence, Plaintiff suffered substantial damages including the loss of her funds, other consequential financial harm, severe emotional distress, loss of sleep, lost work time, and a medical diagnosis for General Anxiety Disorder following the events.

**COUNT III**

**BREACH OF CONTRACT**

89. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

90. Plaintiff and Defendant entered into a valid and enforceable User Agreement governing Plaintiff's Coinbase account. Under that Agreement, Coinbase expressly undertook, among other things, to:

    a. Maintain security measures to safeguard users' accounts, promptly address and manage any reported security breaches and take reasonable steps to reduce or manage such breaches;

    b. Comply with the EFTA in all respects;

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

c. Provide accurate transaction history and enable users to review and report unauthorized or incorrect transactions; and

d. Refrain from selling, transferring, or otherwise disposing of the user's Digital Assets without instruction from the user, except as permitted by law or the Agreement.

91. Plaintiff fully complied with all obligations under the User Agreement, including by promptly notifying Coinbase of the fraudulent and unauthorized transfers.

92. Defendant breached the Agreement by:

a. Failing to protect Plaintiff's account from unauthorized access and transactions;

b. Failing to comply with the EFTA

c. Failing to act in accordance with its security obligations after being notified of the fraudulent access and transfers;

d. Denying Plaintiff the benefit of her retained title and ownership of her funds by refusing to return or credit the stolen amount; and

e. Failing to follow reasonable and timely investigation procedures consistent with the Agreement and applicable law.

93. As a direct and proximate result of Defendant's breaches, Plaintiff sustained significant damages.

## COUNT IV

## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

94. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein

95. Defendant's conduct as alleged herein constitutes unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200 et seq.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

96. Defendant engaged in unlawful conduct by violating the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., and by breaching its contractual obligations under the User Agreement.

97. Defendant engaged in unfair conduct by refusing to refund Plaintiff's funds, denying her the benefit of her retained ownership rights in her assets, and wrongfully placing liability on Plaintiff despite knowing that her assets had been stolen through fraud facilitated by the 2024 through May 15, 2025 data breach. Defendant's conduct offends public policy and is immoral, unethical, oppressive, and substantially injurious to consumers.

98. Defendant engaged in fraudulent conduct by making representations in the User Agreement and on its platform that it would safeguard user assets, promptly address security breaches, and comply with applicable law, when in fact Defendant failed to uphold those obligations. These misrepresentations were likely to deceive, and did deceive, reasonable consumers including Plaintiff.

99. As a direct and proximate result of Defendant's conduct, Plaintiff has lost substantial savings, and continues to suffer consequential damages. Plaintiff seeks restitution, injunctive relief, and attorneys' fees and costs as provided by law, along with any other relief to which she proves.

100. The foregoing acts and omissions constitute numerous and multiple violations of California Commercial Code §§ 11101, et seq.

## COUNT V

## VIOLATION OF CALIFORNIA COMMERCIAL CODE §§ 11201, ET SEQ.

101. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. The foregoing acts and omissions constitute numerous and multiple violations of California Commercial Code §§ 11101, et seq.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

103. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendant for:

- An award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) for Plaintiff;

- An award of treble damages pursuant to 15 U.S.C. §1693f(e);

- Pursuant to 15 U.S.C. § 1693m(a)(2)(A), an award of statutory damages of no less than $100 nor greater than $1,000 for each violation;

- An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);

- An award of actual damages according to proof;

- An award of special damages according to proof;

- An award of the return of the wire transferred funds, plus interest, pursuant to California Commercial Code § 11204;

- An award of punitive damages, in an amount to be determined at trial, pursuant to California Civil Code § 3294(a);

- Any and all other relief the Court deems just and proper.

///

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury.

Dated: November 24, 2025                    Respectfully submitted,

                                            **LOKER LAW, APC**

                              By: ___/s/ Matthew M. Loker____
                                      MATTHEW M. LOKER, ESQ.
                                      ATTORNEY FOR PLAINTIFF